CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    **UNITED STATES DISTRICT COURT**

2    **CENTRAL DISTRICT OF CALIFORNIA**

3    **HONORABLE CORMAC J. CARNEY, JUDGE PRESIDING**

4    # CERTIFIED TRANSCRIPT

5    - - - - - - -

6    ERNEST DEWAYNE JONES,              )
                                        )
7            PETITIONER(s),             )
                                        )
8        vs.                            ) No. CV 09-2158-CJC
                                        )     WEDNESDAY
9    KEVIN CHAPPELL,                    )
                                        )
10           Defendant(s).             )
     _____)

11

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    MOTION RE CLAIM 27

17                   SANTA ANA, CALIFORNIA

18              WEDNESDAY, JULY 16, 2014

19

20
      *Maria Beesley, CSR 9132, RPR, RMR*
21    *Official Federal Reporter*
      *Ronald Reagan Federal Building*
22    *411 W. 4th Street, Room 1-053*
      *Santa Ana, CA  92701*
23    *(714) 564-9259*

24

25

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    **APPEARANCES OF COUNSEL:**

2    FOR THE PETITIONER:    HABEAS CORPUS RESOURCE CENTER
                            BY:  MICHAEL LAURENCE, ESQ.
3                          303 SECOND STREET
                            SUITE 400 SOUTH
4                          SAN FRANCISCO, CALIFORNIA 94107
                            (415)348-3800
5

6

7    FOR THE RESPONDENT:    DEPARTMENT OF JUSTICE
                            BY:  JAMES WILLIAM BILDERBACK II, DAG
8                          and  A. SCOTT HAYWARD, DAG
                            OFFICE OF THE ATTORNEY GENERAL
9                          300 SOUTH SPRING STREET
                            SUITE 1702
10                         LOS ANGELES, CALIFORNIA 90013
                            (213)897-2049
11                          Bill.Bilderback@doj.ca.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*MARIA BEESLEY, OFFICIAL REPORTER, RMR*

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1          **SANTA ANA, CALIFORNIA, WEDNESDAY, JULY 16, 2014**

2                              **WEDNESDAY**

3                              (9:20)

09:20  4          THE CLERK:  Item No. 1, CV 09-2158-CJC.  Ernest Dewayne

5    Jones versus Kevin Chappell.

6          Counsel, please state your appearances for the record.

09:20  7          MR. LAURENCE:  Michael Laurence for petitioner.

09:20  8          THE COURT:  Hello, Mr. Laurence.

09:20  9          MR. BILDERBACK:  Good morning, Your Honor.  Supervising

10   deputy attorney general Bill Bilderback with deputy attorney

11   general Scott Hayward for the warden.

09:20 12          THE COURT:  Good morning, gentlemen.

09:20 13          Mr. Bilderback, maybe I should start with you first,

14   sir.  I'm sure you have seen my order.

09:20 15          MR. BILDERBACK:  I have.

09:20 16          THE COURT:  It's in petitioner's favor and I want to

17   make sure I gave you an opportunity to be heard and tell me your

18   thoughts, comments, criticisms.

09:21 19          MR. BILDERBACK:  Thank you, Your Honor.  I have to say

20   the first thing that struck me when I read the order this morning

21   is I didn't see any discussion of 2254(d) or whether there is

22   clearly established law.

09:21 23          THE COURT:  Why don't we -- do you have a copy of it?

09:21 24          MR. BILDERBACK:  I do.

09:21 25          THE COURT:  Turn to page 26.  But I'll let you read

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    first.  Take a moment, if you would, to read it and then I'll

2    respond to your inquiry.

09:21  3          MR. BILDERBACK:  Right.  And I apologize if it sounds

4    like I'm asking the court questions, but I kind of get the sense

5    the court is inviting me to do that.

09:22  6          THE COURT:  I am.  It's obviously a very important

7    issue, but 2254(d) I don't believe applies because the state court

8    has not made a decision on this claim.

09:22  9          MR. BILDERBACK:  On the delay claim?

09:22  10         THE COURT:  If you want to call it -- I have

11   characterized it as an arbitrary selection for execution claim.

09:22  12         MR. BILDERBACK:  Okay.

09:22  13         THE COURT:  That's obviously based on delay.  And the

14   California Supreme Court has not made a decision on that.  So what

15   I thought the two relevant defenses are:  Exhaustion, and the

16   *Teague* bar.  And with respect to exhaustion, as you know,

17   2254(b)(1)(B)(2) says where circumstances exist that render the

18   state process in ineffective to protect the rights of the

19   applicant, exhaustion is not required.

09:23  20         And basically I'm saying it doesn't make sense, given

21   the amount of delay already, even more delay, but more

22   importantly, Mr. Jones has demonstrated that the process is

23   ineffective and cannot protect his rights.  So I feel it's under

24   that exception.

09:23  25         And then the *Teague*, I just think it's fundamental

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1   principle that the state cannot arbitrarily select people for

2   execution.  That's embedded in due process.

09:23 3          MR. BILDERBACK:  And I think part of the problem -- I

4   mean, I think the exhaustion issue and the *Teague* issue are

5   analytically related, but they're a separate legal inquiry.  And

6   the exception I would take to the exhaustion position that's laid

7   out in the court's order is it seems to be, at least to me,

8   predicated on the notion that because the state court is likely to

9   reject the claim, find that it lacks merit, that that's why the

10  court concluded that the state court process is inadequate to

11  protect the petitioner's rights.

09:24 12         THE COURT:  I'm not sure I would characterize it or say

13  it that way.  There has just been so much delay, and the problem

14  is getting worse, and the state court process hasn't done anything

15  to address the problem.  And in fact, since the *Alarcon* study and

16  the commission, the statistics show me that the problem is getting

17  worse.  So the state cannot fix it.

09:24 18         I'm actually a federalist by philosophy, but every once

19  in a while an issue comes by where I just feel only the district

20  court -- not the Ninth Circuit; the Ninth Circuit doesn't have the

21  capacity to create an evidentiary record, only a district court

22  does.  And California Supreme Court, I think one of the problems

23  too is they don't have really the capacity to call witnesses,

24  receive evidence either.

09:25 25         MR. BILDERBACK:  Certainly to the extent that petitioner

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1  presents a claim that the court feels, the California Supreme

2  Court feels would require evidentiary development in order to

3  properly resolve, the California Supreme Court absolutely has that

4  authority and exercises that authority.

09:25  5       THE COURT:  That's true.

09:25  6       MR. BILDERBACK:  And I certainly didn't get the

7  impression from the order that the court was concerned that that

8  was the defect in California's process; that their inability to

9  take evidence on this important question.

09:26 10       THE COURT:  No.  My point, it's a simple one.  It's not

11 that complicated.  The way I'm looking at it is it's a huge

12 problem.  It's been a problem for a while.  And they haven't fixed

13 it and they're not going to fix it.  And I just feel I have -- not

14 trying to preach, that's the last thing I'm trying to do -- but I

15 have a solemn obligation to defend and protect the Constitution.

16 And when I look at the statistics, I have at least convinced

17 myself that there is a constitutional problem right now.  And it's

18 not going to be fixed and no one is fixing it, and I can't be

19 passive or silent.

09:27 20       MR. BILDERBACK:  And I appreciate that, Your Honor.  But

21 I think the problem, the basic problem that the state has with the

22 order right now is the court's authority on federal collateral

23 review is, of course, tailored by the statute.  And it seems to us

24 that the court has overlooked some important portions of that

25 statute because the court has concluded, in its own mind, that

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    there is this substantial constitutional violation.

09:27  2          And I think one of the problems -- and it is a

3    federalist problem and I am California's lawyer, after all, at

4    least standing here today, and --

09:27  5          THE COURT:  A very successful one I might add.

09:27  6          MR. BILDERBACK:  That's generous of you to say, Your

7    Honor.  I think that if we are to acknowledge, for the sake of

8    argument, that the claim as presently constituted has never been

9    fairly presented to the state court, it's my best reading of 2254

10   that the state court must be given an opportunity to correct the

11   defect before the federal court can intervene.

09:28 12          And I think that's where I take my greatest departure

13   from, at least, this section of the court's order that we're

14   discussing right now.  I don't think it is fair to say that

15   California is incapable of remedying this problem itself.  I think

16   that especially because the court seems to be convinced that there

17   is a substantial difference from the claim at the time that it was

18   presented to California --

09:28 19          THE COURT:  Oh, yes.

09:28 20          MR. BILDERBACK:  -- at the time of the appeal, and the

21   claim is -- I'm sorry, I didn't mean to interrupt.

09:28 22          THE COURT:  No, I was interrupting you, not trying to be

23   rude, but I think it's important that the record is clear.  The

24   California Supreme Court has not looked at this claim.

09:28 25          MR. BILDERBACK:  Exactly so.  And I think that

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    principles of federalism and comity would require petitioner,

2    before he comes to the federal court at all, is my understanding

3    of the way it's supposed to unfold, before he comes to the federal

4    court at all to complain that there is a constitutional defect in

5    California's death penalty structure, that he give California an

6    opportunity to confront, analyze and, if appropriate, grant or, if

7    in California's wisdom they believe it's appropriate, deny relief

8    on that claim.

09:29 9          For petitioner to leapfrog -- and I don't mean to lay

10   this at the feet of the petitioner because I am familiar with the

11   somewhat unusual procedural history of this case where the

12   augmentation of this claim and the heightened discussion of this

13   claim is sort of part of a conversation between the parties and

14   the court.  But however you slice it, the California courts, as we

15   stand here today, have been completely cut out of the

16   decision-making process.

09:30 17         The court has expressed some skepticism about

18   California's capacity to properly adjudicate the claim, but I'm

19   just going to stand here and gainsay that with all due respect,

20   Your Honor.  I think California has every capacity, has the

21   ability to properly adjudicate constitutional defects in the

22   California death penalty process.  I think they are better

23   situated to make that determination, frankly, than any other

24   court, because we are examining questions of California law.

09:30 25         There are also complicated issues of policy that are

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

 1   contemplated by the court's order that, again, the state should

 2   and must be given an opportunity to remedy those in the context of

 3   this case before federal intervention, I think, would be

 4   appropriate.

09:31  5          So that's -- I think that's the bottom line on the

 6   exhaustion issue for the state, is I just I have to disagree with

 7   the court that California's process is not effectual.  And I have

 8   to argue in the strongest terms I can that California should and

 9   must be given an opportunity to correct these new, never before

10   presented claims of constitutional defect before the federal court

11   passes on them.

09:31 12          THE COURT:  I do understand, respect, and appreciate

13   your position.  I obviously disagree for the reasons I said.  But

14   maybe we can agree on this:

09:31 15          I feel this is of paramount importance.  Do you agree

16   that I should certify this for partial judgment and get it to the

17   circuit right away?

09:32 18          MR. BILDERBACK:  Absolutely, Your Honor.  And before I

19   conclude all of my remarks, because it seems the court is kind of

20   closing out my discussion, I also wanted to just throw out there

21   for the court that there is a history of Ninth Circuit authority

22   on this question, on the question of delay and its effect on the

23   constitutionality of the state's death penalty scheme.  And it's

24   absolutely unbroken.

09:32 25          THE COURT:  But that's never been analyzed in the

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1   context of a systemic problem.  It's always been on an individual

2   basis, first of all.

09:32  3           And second of all, it's where we, I guess, we started

4   out.  And I realize you haven't had an opportunity to carefully

5   study my order, but simply, I feel we have come full circle from

6   *Furman*.  And the delay is obviously the cause, but the claim is

7   arbitrary selection for execution in that the people that

8   California will execute are the ones that have gotten through this

9   dysfunctional process.  It's not the ones that committed the most

10  egregious crime.  It's not the ones who were sentenced to death at

11  the earliest date.

09:33 12          And if you look at the statistics, I mean, I was

13  actually quite troubled.  I don't have a rational explanation for

14  you, but there is some of these petitions, languishing in federal

15  court, district court, not even the Ninth Circuit over 30 years;

16  33, 35 years.  They're still in the federal district court.

09:33 17          So, I don't see what is the rational, reasonable basis

18  for who gets executed first other than they get through this

19  dysfunctional process.  And to me, that's arbitrary.

09:34 20          MR. BILDERBACK:  And I appreciate that.  And I did glean

21  that from the court's order.  But I think that does present the

22  *Teague* issue fairly squarely at that point, because based on the

23  comments the court just made and based on my brief reading of the

24  order, it does seem that the court is saying, if I understand the

25  court, that there is a new rule that I'm going to apply to this

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    case, which is to say I'm going to find that under these facts

2    there is an arbitrariness to the imposition of the sanction, not

3    the penalty, but the sanction itself of execution, that is

4    constitutionally intolerable.

09:34  5         And I think it would be very difficult to survey the

6    legal landscape, as *Teague* instructs us to do, and find that the

7    rule that the court is applying in this case was compelled by

8    existing precedent at the time -- I'm sorry, I'm just sort of

9    spinning tales because I'm obviously thinking some of this stuff

10   through.

09:35  11        I don't even know what the relevant point in time would

12   be for *Teague*.  Generally we speak of finality of the conviction.

13   But the courts of course now speaking of factual changes that have

14   occurred post conviction and the effect that those factual changes

15   post conviction have on the arbitrariness.

09:35  16        So, anyway I apologize.

09:35  17        THE COURT:  No apology.  In an interesting way you are

18   making me feel better about my decision that at least you have got

19   to give me credit that I have thought it through.

09:35  20        MR. BILDERBACK:  Absolutely.

09:35  21        THE COURT:  I have addressed the *Teague* rule.  And

22   simply, this is not a new rule.  That *Furman* and the Supreme Court

23   precedence since *Furman* have made it explicitly clear that

24   arbitrariness can have no role in the death penalty system.  In

25   fact, in any kind of punishment.

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

09:36   1      That's at the fabric of our due process.  And given I

2   believe the statistics show that there is arbitrariness here, it's

3   not a new rule for *Teague* purposes.

09:36   4      MR. BILDERBACK:  And I understand that.  And I think

5   that that's correct as far as it goes.  I think the problem is

6   there certainly has been ample authority which has pretty clearly

7   stated that -- and I understand the court says that those cases

8   were only concerned with delay alone, but there are ample cases.

9   As a matter of fact, I have been unable to find a single case,

10   until today, which has ever held that delay in execution of a

11   capital sentence is constitutionally prohibited.

09:37   12      THE COURT:  I'm not aware of one either, if that makes

13   you feel better.  But I would actually defer to you on the case

14   law there as far as delay.

09:37   15      But again, what I'm saying here is different.  Delay is

16   one of, obviously, the causes of why it's arbitrariness.  But I

17   don't believe any court, to my knowledge, has said that you can

18   arbitrarily select people for execution.

09:37   19      MR. BILDERBACK:  Absolutely.  And we don't disagree with

20   that at all.  Of course.  I think, though, where I'm stumbling in

21   terms of following the Court's reasoning is -- I mean, to get back

22   to our discussion of exhaustion, really, it seemed to me that the

23   court's principal objection to returning to state court for

24   exhaustion is it would lengthen the delay.  Not that there is a

25   risk of arbitrariness in the state court determination

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    necessarily, but just there is no point in going back because

2    delay is such a gigantic component of the arbitrariness calculus

3    that the court is engaging in.  So exacerbating the delay would

4    only make things worse.

09:38  5         THE COURT:  That's part of it.  That's the first point I

6    made.  But more importantly is, it just seems ironic, chaotic, to

7    require Mr. Jones to go back to a system that he has demonstrated

8    is dysfunctional.

09:38  9         It gets back to the exception that I'm saying I don't

10   believe the California Supreme Court can fix this, and they have

11   demonstrated that they can't fix it.  In fact, they're making the

12   problem worse.  And I know you disagree with that.

09:39 13        MR. BILDERBACK:  Absolutely.  Of course.

09:39 14        THE COURT:  And I respect your position.  And so you

15   understand where I'm coming from, it's the statistics.  The

16   statistics they don't lie.  I'm not manipulating those statistics.

17   They are what they are.  And they tell me that the California

18   Supreme Court is part of the problem.  And in fact, they're making

19   the problem worse with the passage of time.

09:39 20        MR. BILDERBACK:  And I'm not unmindful of that.  But

21   what we're talking about specifically in the context of the

22   exhaustion inquiry is dealing with Mr. Jones specifically who has

23   very capable counsel who's already appointed to represent him, is

24   very familiar with this issue.

09:39 25        So a lot of the concerns, this sort of structural or

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1  institutional concerns that inform the statistics that the court

2  is referring to, aren't currently applicable to Mr. Jones'

3  situation.

09:40 4        Historically, Mr. Jones did have some delay in the

5  appointment of counsel.  Did have some delay, absolutely, in the

6  resolution of his state appeal and his state habeas.  We could

7  dispute whether that delay was undue or extraordinary.  But there

8  is no question that it was -- there was a passage of time that was

9  not insubstantial.  Absolutely.

09:40 10       But going forward, with Mr. Jones specifically, a lot of

11  the issues that the court is talking about are really not --

12  wouldn't really impact Mr. Jones' situation because he does have a

13  lawyer already.  The lawyer is already working for him.  The

14  state's already recognized him as counsel.  So those issues are

15  already -- are resolved in a way that would not interfere with the

16  expeditious resolution of this issue in state court.

09:40 17       THE COURT:  And I'm sure you respectfully disagree with

18  me, but to me, that's a big problem.  It's a big problem because

19  again, if you compare Mr. Jones to other people who have been also

20  been death qualified, i.e. they have been sentenced to death, they

21  have been on death row a lot longer.  Why should he be first in

22  line once you get the protocol worked out?

09:41 23       That seems to me to be very unfair.  And if we were just

24  talking about a couple people, maybe I would be more sympathetic,

25  but we're talking about hundreds of people that have been on death

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    row longer than Mr. Jones.

09:41  2         Like I said, the first few sheets I have, we have 35

3    years, 34 years, 33 years, 32 years.  I mean, I can go on and on.

4    I have hundreds of people that have been on there longer.  Many of

5    those are still in district court.

09:42  6         So how is it fair, how is it rational that Mr. Jones go

7    to the front of the line and get executed when you have serial

8    killers or people who commit just as despicable crimes not getting

9    executed?

09:42  10         And out of complete candor with you, that's how I

11   started looking at this, because I realized that, wow, Mr. Jones,

12   relatively, he has gotten to this point after about 20 years

13   which, to me, is an unreasonable amount of time.  But relatively

14   speaking, it's not 35 or 40 years.

09:42  15         But then there are so many others -- not just a few --

16   so many others that have been on death row for many years more

17   than him, they're not going to get executed and he is.  And I had

18   a problem with that saying you could go ahead and execute him, go

19   to the next step when people who have committed just as egregious,

20   in some instances I think even more egregious crimes, are not

21   going to get executed.

09:43  22         MR. BILDERBACK:  And I understand the court's point, but

23   I think the court would understand the state's frustration with a

24   federal court expressing that excessive delay in a federal court

25   has rendered the state process violative of the Eight Amendment.

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

09:43  1          I think the court's precisely correct, and I can speak

       2    of my own personal experience, many of these cases do take a long

       3    time in state court.  Absolutely.  But they often take just as

       4    long or even longer in federal court once the state court process

       5    has been completed to finality.

09:44  6          THE COURT:  I think the statistics support what you are

       7    saying.

09:44  8          MR. BILDERBACK:  And so there is -- getting back to the

       9    federalism and comity discussion we were having earlier, there is

      10    something antifederalist about a federal court finding that the

      11    state court process is unconscionably slow or arbitrary because

      12    federal judges have issued stays in many, many cases.  And that's

      13    the reason those delays have occurred.

09:44 14          THE COURT:  Certainly in some instances that's true.

09:44 15          MR. BILDERBACK:  Yes.  And I think that especially when

      16    we're dealing with the terms of years for many of these cases that

      17    get into the longer periods of time than are contemplated by Mr.

      18    Jones' case, I would say that the vast bulk of those cases have

      19    spent a long time, sometimes as long, twice as long in federal

      20    court as they have in state court.

09:45 21          THE COURT:  In some instances you are right.

09:45 22          MR. BILDERBACK:  And I think that there is --

09:45 23          THE COURT:  I think like Mr. -- one of the -- Mr.

      24    Bittaker.

09:45 25          MR. BILDERBACK:  *Bittaker.*  That's Mr. Hayward's case as

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    a matter of fact.

09:45   2            THE COURT:  Mr. Bittaker has been -- he was sentenced to

3    death in 1981 and his habeas petition I think was filed 1991.

09:45   4            MR. BILDERBACK:  In federal court.

09:45   5            THE COURT:  In federal court.

09:45   6            MR. BILDERBACK:  So 23 or so years ago.  Exactly.

09:45   7            THE COURT:  I can understand and appreciate your

8    frustration.  I imagine the argument in response to that, though,

9    is federal courts have found problems in some of the death

10   sentences and significant habeas relief has been granted by the

11   federal courts.  So the federal courts have an important role to

12   play in the process.

09:46   13           MR. BILDERBACK:  And we absolutely do not dispute that.

14   And we do agree that the federal courts have an essential role to

15   play in the process, but I am speaking of specifically the matter

16   of taxing the state court for a delay that we would oppose, that

17   we do not welcome.

09:46   18           We patiently engage in federal collateral review, but it

19   is an interference with the state court process, albeit one that

20   Congress has authorized.  And so to say that the state court is --

21   the state is not acting expeditiously enough in a case in which

22   the delay in many, if not most of the cases that we're relying on,

23   can squarely be laid at the feet of the federal court

24   specifically, the federal district court specifically, our hands

25   are completely tied.

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

09:47 1          We cannot expedite federal resolution of these cases

2     anymore than we already do.  We litigate these cases aggressively.

3     I think if the court were to examine -- and I'm not inviting the

4     court to do this because it would be a mind-numbing task -- but if

5     the court were to examine the amount of time that the court is

6     waiting for the state to respond out of the whole lifespan of a

7     case, it would be the shortest single element compared to the

8     court carefully considering the issues, the petitioner presenting

9     his position on the issues.

09:47 10         The state is doing everything they can to expedite these

11    cases as quickly as is reasonably possible.  And nevertheless,

12    then to be told by the federal court well, because of the delay in

13    the resolution of these matters, and it's been so excessive and so

14    uneven because it doesn't seem to be rationally related to the

15    severity of the offense or the date of the offense or these other

16    factors that the court has identified, the court has placed now

17    the state in a position where we literally cannot win no matter

18    what we do.  We cannot force the court to resolve these cases.

09:48 19         But then the court turns and points to the delay in the

20    resolution of the cases and says that shows that California's

21    death penalty system is irreparably and broken and violative of

22    the Eight Amendment.  So we're kind of stuck in an untenable

23    position where we have no control over the thing that you are

24    saying the state is violating his rights by doing that.

09:48 25              THE COURT:  Well, I do appreciate and understand your

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    frustration.  But I would also cite you to the commission and the

2    *Alarcon* study which makes several recommendations on what

3    California can do.  It's not my prerogative to micromanage the

4    attorney general to say what California should or should not do.

5    All I can rule on is this consistent with the constitution.  And

6    this system, in my opinion, my humble opinion, it's not consistent

7    with the constitution.

09:49  8         And I can't -- I appreciate and respect your federalism

9    concerns because, like I said, I like to think that I am a

10   federalist, but I can't sit silent and participate in a process

11   that I think is unconstitutional.  I'm on a collision course with

12   my oath.  So I have to do something.  And I just don't feel that

13   California can fix it, has proven that they can fix it, or are

14   taking any action to fix it because again, the *Alarcon* study and

15   the Commission have been around for years, and the situation is

16   not improving.  It's actually getting worse.

09:50  17        So I don't have any confidence at all that California

18   can fix it.

09:50  19        MR. BILDERBACK:  Okay.  Well, then turning to the

20   question of where do we go from here, if the court would like.

21   There is a couple of things I'd ask the court to do.  One is I'd

22   ask the court to consider staying the order because knowing Mr.

23   Laurence as I do, and his friends at the federal public defender,

24   they're going to be putting this order in front of every judge in

25   the federal system in order to encourage every death sentence in

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1  California to be vacated, and that would become logistically

2  complicated for us to say the least.

09:51 3      So if I could ask the court to please stay the order

4  pending the resolution of the interlocutory appeal so we can --

5  rather than having to respond to 678 of these at the same time, I.

6  think the court's order stands for what it stands for.  It

7  explains the court's position in great detail.  I think it

8  presents the issue as squarely as we could want it to be

9  presented.  So I think that if I could ask the court for that

10  indulgence, I'd be very appreciative.

09:51 11      THE COURT:  I will seriously consider your request.  I

12  want to hear from Mr. Laurence on the procedure issue as well.

09:51 13      MR. BILDERBACK:  Thank you, Your Honor.  But I do get

14  the impression that the court is going to authorize the

15  interlocutory appeal, in any event.

09:52 16      THE COURT:  I will do that because I just think from the

17  state's perspective, from the petitioner's perspective, from the

18  jurors' perspective, from the taxpayers' perspective -- and I

19  don't say this trivially or lightly -- from the families of the

20  victims' perspective, this is of paramount importance.  And that

21  was another motivating factor.

09:52 22      I had the Thomas Edwards case which was one of the

23  statistics.  And that went through the process.  Again, years of

24  delay.  And at one of the proceedings one of the victims' father

25  spoke to me quite passionately.  And I remember looking at the

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

 1    "Exit" sign under the clock because it was very difficult to hear

 2    him say his only reason for living was to see Mr. Edwards get

 3    executed.  But he was pretty depressed and frustrated because he

 4    doesn't have any confidence that he would see that day.  That with

 5    all the experts and with everything that's given Mr. Edwards, "I'm

 6    probably going to die before then," or Edwards will die before he

 7    is executed.  Either of those options.

09:53  8         And I affirmed the death sentence and the Ninth Circuit,

 9    remarkably, came back I think within two or three years and

10    affirmed my decision.  And then he died about a month and a half

11    later on death row.  So the worse nightmare of the father came

12    true.

09:54 13         So again, I have thought a lot about this.  I have had

14    this concern for years.  And then I finally started digging and I

15    looked at the statistics and then once I looked at the statistics,

16    I felt I had no choice.

09:54 17         MR. BILDERBACK:  That's all I have for the court right

18    now.

09:54 19         THE COURT:  I appreciate it.

09:54 20         Mr. Laurence.

09:54 21         MR. LAURENCE:  Good morning, Your Honor.  Professor

22    Anthony Amsterdam gave me advice as a young lawyer and that was,

23    if you have a tentative ruling in your favor, sit down and say

24    nothing.

09:54 25         But I have to deal with at least one of the issues that

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

 1    he raised in objecting to the court's order, and that is with

 2    respect to the federal delays, as pointed out in our briefing, and

 3    certainly as documented by the Commission on the Fair

 4    Administration of Justice report, the primary reason of federal

 5    court delay is not because district court judges don't take their

 6    job seriously.  It's not because habeas petitioners are filing

 7    dilatory motions.  But rather, it's the ineffectiveness of the

 8    state process that preceded the initiation of the federal

 9    proceedings that causes the delay.

09:55 10          A Pricewaterhousecoopers study was done in 1989.  It

   11    looked at why California cases cost far more money than any other

   12    state in the country.  And it looked to the practices of the

   13    attorney general's office primarily at that point was not waiving

   14    exhaustion, insisting on procedural issues to be resolved when the

   15    merits could be resolved much quicker.

09:55 16          Since that time it has only gotten worse.  The

   17    California system doesn't fund these cases at a sufficient rate in

   18    the state court so they come to this court unprepared.  We have to

   19    spend a tremendous amount of time and money simply investigating

   20    the cases in the district court process because the California

   21    system failed to provide sufficient funds and resources to work

   22    them up in the state court system.

09:56 23          Then after we develop new facts, the vast majority of

   24    these cases go back for exhaustion purposes.  I think the figures

   25    that I cited were 67 percent of the cases go back for exhaustion,

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    and the average time from the date that the petition is filed

2    until the California Supreme Court resolves that petition is over

3    three years.

09:56  4         And that is cases that have been resolved.  It's almost

5    difficult to really estimate how much time we would have to spend

6    in state court exhausting this claim.  And the court is absolutely

7    right.  This claim has never been resolved by the California

8    Supreme Court and that's fairly well-established by our papers.

09:56  9         So 2254(d) is not an issue.  The *Dickens* case very

10   clearly says if the facts and legal basis fundamentally alter the

11   claim that has been resolved by the state court, 2254(d) is not a

12   problem.

09:57 13         But the amount of time that we would have to take to

14   exhaust this claim is at least four years from the time that we

15   filed that petition.  And in fact, I'm only guessing because I'm

16   only looking at cases that have been resolved.  There are 176

17   cases before the California Supreme Court on habeas corpus

18   proceeding.  107 of them have been sitting there for an average of

19   four years after the reply brief has been filed, which means the

20   California Supreme Court is not going to be able to get to this

21   case in the foreseeable future.

09:57 22         So the federal court delay stems primarily from the

23   problems of the state court system not providing adequate

24   resources to investigate the cases.  It is compounded by the fact

25   that the California Supreme Court then does not issue a reasoned

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1   decision, but simply issues an order that says the petition is

2   denied, allowing everybody -- the parties and this court -- to

3   guess at to the reasoning the court used in rejecting that claim.

09:58   4           Now after Cullin v. Pinholster and Harrington v.

5   Richter, Richter v. Harrington, the problem is that we have to

6   identify potential reasons for the California Supreme Court's

7   decision, which as the history of this case shows, takes a

8   tremendous amount of time and effort.

09:58   9           And compounding that problem is that factual disputes

10   that were raised in state court are not resolved in state court.

11   They are passed along to the federal district courts to resolve.

12   And that is why the Commission pointed out that the federal system

13   is burdened by the California dysfunctional and the primary cause

14   of delay that we're experiencing now in federal court stems not

15   because judges are not doing their job, but because the California

16   system was broken beyond repair.

09:59   17           And to me, that is really the crux of the problem as to

18   saddling the attorney general with the problem of the federal

19   courts delaying these cases and insisting on us going back to

20   exhaust claims when the reality is there is no remedy in state

21   court.

09:59   22           Now, the court pointed out that futility is different

23   from ineffective process.  The futility argument is that if we

24   went back to state court, we would get the exact same result.  And

25   quite frankly, the statistics bear that out.  This issue has been

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

 1   raised in some form or another in over 150 cases, and the
 2   California Supreme Court has not even found a prima facie case
 3   requiring the issuance of an order to show cause.  So futility, to
 4   me, is a very legitimate concern and we advanced it as a reason
 5   why we should not have to go back to exhaustion.
09:59  6         But the court's point which is ineffective forum to me
 7   is equally as important and equally compelling with respect to
 8   exhaustion.  Requiring us to go back for an additional four years
 9   at a minimum only compounds the constitutional violation, does not
10   advance the interest of either the state or the petitioner because
11   when we get back here in four more years, we still have the entire
12   case still to resolve.  That, to me, is an ineffective forum.  To
13   go back to the court to say California Supreme Court, you are
14   dysfunctional, not because the court is dysfunctional, but because
15   the state system has not funded this process sufficiently to allow
16   the system to work.
10:00 17         And as we pointed out in our opening brief, it starts
18   with the statute.  The statute is incredibly broad.  And in our
19   different claim, the claim that we suggest that the California
20   death penalty statute is unconstitutional because it fails to
21   narrow, we provided the court with details as to the percentage of
22   cases that could be charged as a capital crime.  95 percent of
23   first-degree murders could be charged as a capital crime which to
24   me is a tremendous burden on the state which, as the Commission
25   pointed out, is exactly the root of the problem.

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

10:01   1         We have this huge influx of cases which are potential

        2   capital crime and which state resources have to go to at the trial

        3   court level.  We have a huge number of capital sentences coming

        4   into the system into the appeal process, and that process is

        5   overworked from the beginning.

10:01   6         If we don't fund the system -- and we certainly have not

        7   funded the system at the beginning of process -- we are only

        8   asking for arbitrariness and unconscionable delay, as this court

        9   points out.

10:01  10         To me, that is the crux of the problem.  And I served on

       11   the Commission of Fair Administration of Justice.  I was a

       12   minority member because there were very few defense lawyers on

       13   that commission.  And I was struck by the unanimous consideration

       14   given by all of the members.  We took testimony from 70-some

       15   witnesses.  We read thousands of pages of information about how

       16   the system works in California, comparing it to other states.

       17   That, to me, is remarkable about how unique California is.

10:02  18         Twenty-five to 30 years from sentencing to execution is

       19   unheard of in the rest of the world, let alone the rest of the

       20   country.  Virginia averages six to seven years.  Even Texas

       21   averages about 10 years.  And to me, the issue is a system that

       22   has been looked at in 2006 and have made recommendations by a

       23   commission which was largely composed of prosecutors and law

       24   enforcement personnel recommending these kinds of changes as the

       25   only way to fix this system and having now waited eight years for

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    somebody to read the report is very disheartening.

10:02  2         Every year my office has submitted budget change

3    proposals to increase the size of my office so that we could

4    handle the backlog of cases, and every year those have been denied

5    since the commission report.

10:03  6         There is no change even though we have money this year.

7    In fact, I have $470 less in this budget than I had in last year's

8    budget, and I still don't have sufficient funding to fully staff

9    my office.

10:03  10        So Mr. Jones, who comes through the system in a

11   relatively quick fashion because he had appointed counsel for

12   habeas proceedings five years after his judgment.  As we pointed

13   out in our papers, many people have waited 10 to 15 and even 20

14   years, 22 years for Mr. Solomon without habeas counsel.

10:03  15        Mr. Jones is plucked from the stream of cases coming

16   into the California Supreme Court and is assigned habeas counsel

17   relatively quickly.  And he is short-circuited on time because at

18   the time we were appointed to represent him, there's only two

19   years permitted for us to investigate and fully develop his claims

20   for his habeas petition.

10:03  21        Now the California Supreme Court realizes that given the

22   size of these cases, the difficulty of finding lawyers who are

23   willing and capable to take these cases, habeas petitioners have

24   three years to do that kind of work.  So Mr. Jones, plucked from

25   that stream and given a less time than most of these people, filed

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1    his petition two years after the appointment.  The case sat for

2    six and a half years before the California Supreme Court issued

3    its very cursory denial.

10:04  4         Mr. Jones has now been the benefit of the only state

5    institution in California that is designed to do habeas cases and

6    he is now paying the price for it because in 1995 he was sentenced

7    to death and he is virtually the only person at this stage of

8    these proceedings.  That's the arbitrariness that this court has

9    identified and that's the arbitrariness that is unconstitutional

10   under *Furman* and *Greg*.

10:04  11        I mean, the question about *Teague* to me is an easy one.

12   *Furman*, the very language of every one of the opinions that formed

13   the majority opinion talk about being struck by lightening.

14   Execution being arbitrary because so few people are selected to be

15   executed and are actually executed.  There is nothing new about

16   that law.  That is bedrock law that was established in Furman v.

17   Georgia and reaffirmed in Greg v. Georgia.  *Furman* is still good

18   law.  No case has ever overruled Furman v. Georgia.  And *Greg*, in

19   fact, the plurality opinion, endorsed it as controlling law of the

20   United States of Supreme Court.  So *Teague* has no issue to me

21   whatsoever.

10:05  22        That leaves us now with simply what do we do about the

23   procedure.  The state would have us go back.  Go back to the

24   California Supreme Court.

10:05  25        THE COURT:  That's not going to happen.  I think Mr.

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1   Bilderback actually recognizes that.  I didn't mean to cut you

2   off.  I could listen to you all morning.  But I'm going to be

3   issuing my order.  What I do want you to address for me is the

4   procedure from here.

10:06  5        I do feel strongly -- I haven't made up my final

6   decision -- but I feel strongly I should certify this and it

7   should go to the circuit as quickly as possible.  I don't want to

8   hold this up for me to resolve the other claims.

10:06  9             MR. LAURENCE:  And I agree, Your Honor.  The question is

10  whether or not you can stay an order and also then certify it for

11  interlocutory appeal.  I don't believe you can.  The order has to

12  be a final order.  Not a final judgment, but has to be a final

13  order.  Under rule 5, this court has to grant permission for the

14  interlocutory appeal and then the circuit has to grant

15  interlocutory appeal after this court issues its certification of

16  the order.

10:06 17        The court can stay -- it can't stay the order, but it

18  can delay the certification of the order.  I don't see a reason

19  for doing so, Your Honor.  I think we probably have fully

20  exhausted the facts that this court obviously has looked at very

21  carefully.  The legal issues are fairly well developed.  And I

22  think California habeas corpus petitioners, the state, the

23  victims' families, everyone needs to have the issue resolved.  And

24  I fully agree that it should be certified as an interlocutory

25  order.

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

10:07 1          Now the one issue I did want to address is -- and I

2      apologize that I made some errors obviously in my original

3      declaration in computing some of the facts.  I don't think they

4      made a very big difference, but certainly I think all of the

5      numbers we provided the court in those two declarations is now

6      accurate.

10:07 7          With respect to appendix A, we had submitted track-

8      changed version to account for some of the additional facts that

9      we came -- as we were reviewing our own statistics.  And I don't

10     know if the court wanted me to address any of those issues.

10:07 11         THE COURT:  No.  I agreed with them and I have revised

12     the appendix.  So the revised appendix that's going to be attached

13     to the order reflects the changes you made.

10:08 14         MR. LAURENCE:  Then, Your Honor, I submit the order to

15     the court.

10:08 16         THE COURT:  Okay.  Mr. Bilderback, I will certify this.

17     I'm not inclined at this point to stay the order.

10:08 18         MR. BILDERBACK:  I think Mr. Laurence was right about

19     that.  I made a mistake.

10:08 20         THE COURT:  Okay.  You are both so professional.  I

21     would appreciate if you could submit a proposed partial judgment

22     with the certification.  And it sounds to me like you can agree on

23     what the wording of that should be so you can get to the circuit

24     quicker rather than later.

10:08 25         Could you get that to me within a week?

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

10:09  1        MR. LAURENCE:  Yes, Your Honor.  I have got to fly to

2  Durham, North Carolina this afternoon for a training I'm

3  conducting through Sunday.

10:09  4        THE COURT:  Okay.  Would you like two weeks?

10:09  5        MR. LAURENCE:  It will be in before two weeks.

10:09  6        THE COURT:  So if you could submit a partial judgment

7  granting petitioner's claim 27 and vacating his death sentence.

8  And then the certification, that there is no just reason for the

9  delay.  Resolving the constitutionality of California's

10  administration of the death penalty system is of paramount

11  importance to the state, to petitioner, to jurors, taxpayers, and

12  the families of the victims.  And I don't believe waiting is in

13  anybody's interest, especially given my view that the

14  constitutional problem is only going to get worse.

10:09 15        And if you could run it by the attorney general and make

16  sure that they are comfortable with it and then submit it, and

17  I'll sign it.

10:10 18        MR. LAURENCE:  Yes, Your Honor.

10:10 19        THE COURT:  Okay.  I appreciate the parting your

20  thoughts.  And it's a difficult decision and it was a humbling

21  decision.  All right.  Thank you.

10:10 22        THE CLERK:  All rise.  Court is now adjourned .

23        *(Whereupon the proceedings were adjourned at*

24  *10:10.)*

25

CV 09-2158-CJC - 07/16/2014 - WEDNESDAY

1                                    -oOo-

2

3                               *CERTIFICATE*

4

5          *I hereby certify that pursuant to Section 753, Title 28,*

6    *United States Code, the foregoing is a true and correct transcript*

7    *of the stenographically reported proceedings held in the*

8    *above-entitled matter.*

9

10   *Date:  JULY 16, 2014*

11

12   */S/*
     _____
13   *MARIA BEESLEY, RPR, RMR*
     *OFFICIAL COURT REPORTER*
14

15

16

17

18

19

20

21

22

23

24

25